UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-98 (MJD/JFD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES RAY WORKMAN,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

1. The United States of America and Charles Ray Workman (hereinafter referred to as "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

2. **Charges**. Defendant agrees to plead guilty to Count One of the Indictment, which charges Defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. Defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Indictment.

3. **Factual Basis**. Defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, Defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From in or about 2021 through 2022, Defendant knowingly executed a fraudulent scheme, using his company MN Crete Pools, LLC, to obtain customer down payments for concrete swimming pool projects he marketed to customers but knew he could not complete.

As part of the scheme, Defendant marketed concrete swimming pools and pool installation services to customers around Minnesota, including by advertising on the website and social media pages for MN Crete Pools. Defendant fraudulently induced his recruited customers to pay upfront some of his advertised price for the pool installation work, even though Defendant knew that he would complete little to no work on many of the installation projects he advertised. For instance, Defendant falsely represented to his customers that in exchange for their down payments, Defendant could "secure" a spot for them in MN Crete Pool's workload for the installation of a concrete swimming pool the same year their down payment was provided. At times, when doing so, Defendant sometimes falsely represented to customers he only had "one spot" left available for a certain customer, before continuing to solicit and signup additional customers after making that misrepresentation.

It was further part of the scheme, that Defendant falsely represented to some of his customers that each swimming pool would be protected by a "lifetime guarantee." In reality, Defendant knew that the swimming pools he sold were unlikely to be completed let alone guaranteed.

It was further part of the scheme that Defendant falsely told customers, as late as early 2022, that his failure to construct and install their pools was due to COVID-related delays, weather, or equipment shortages. In reality, Defendant knew full well by early 2022 that the delays were caused by his own failure to fully utilize his customers' down payments for completion of the promised work, because Defendant misappropriated customers' funds.

Defendant admits that the deposit of customers' checks or cashier's checks constituted interstate wirings for the purpose of executing the scheme in violation of Title 18, United States Code, Section 1343. For example, as alleged in Count One, on or about July 29, 2021, the Defendant deposited Victim A's cashier's check ending 5509 to the Defendant's Riverland Bank account ending 7028.

In furtherance of the fraud scheme, Defendant regularly converted some or all of the customers' payments to his own use. On occasion, Defendant pocketed his customers' down payments and used their money for his own personal use and benefit, including making a more than $3,000 child support payment, spending more than $18,000 at Casino A, and spending more than $6,000 on a horse and saddle, in addition to what he received from MN Crete Pools' payroll.

In total, Defendant obtained from his customers at least $820,679.25 in fraud proceeds.

4. **Waiver of Pretrial Motions**. Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea

agreement, Defendant knowingly, willingly, and voluntarily gives up the right to file any pre-trial motions in this case. Defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

5. **Waiver of Constitutional Trial Rights.** Defendant understands that he has the right to go to trial. At trial, Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. Defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. Defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, Defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge Defendant guilty without a trial.

6. **Additional Consequences**. Defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

7. **Statutory Penalties**. The parties agree that wire fraud, as charged in Count One of the Indictment, carries statutory penalties of:

a. a maximum term of imprisonment of 20 years in prison;

b. a supervised release term of up to three years;

c. a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

d. assessment to the Defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

8. **Revocation of Supervised Release.** Defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and Defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. Defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Guidelines Calculations**. The parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a. Base Offense Level. The parties agree that the base offense level for wire fraud is **7**. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that the offense level should be increased by **14** levels because the loss is more than $550,000, but not more than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H). The parties further agree that the offense level should be increased by **2** levels because the offense involved 10 or more victims. U.S.S.G. § 2B1.1(b)(2)(A)(i). The parties agree that no other specific offense adjustments apply.

c. Acceptance of Responsibility. The government agrees to recommend that Defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the Defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1**-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the Defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the Defendant testifies truthfully during the change of plea and sentencing hearings; (2) Defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the Defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the Defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

d. Criminal History Category. The parties believe that, at the time of sentencing, the Defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, Defendant will be sentenced based on his true criminal history category, and he will

not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

e. Guidelines Range. If the adjusted offense level is **20 (7 + 14 + 2 – 3)**, and the Criminal History Category is **I**, the Sentencing Guidelines range is **33-41** months of imprisonment.

f. Fine Range. If the adjusted offense level is **20**, the Sentencing Guidelines fine range is **$15,000** to **$150,000**. U.S.S.G. § 5E1.2(c)(3).

g. Supervised Release. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count 18. U.S.S.G. § 5D1.2(a)(2).

10. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

11. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the

Court does not accept the sentencing recommendation of the parties, the Defendant will have no right to withdraw his guilty plea.

12. **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which Defendant is convicted. U.S.S.G. § 5E1.3. Defendant agrees that the special assessment is due and payable at the time of sentencing.

13. **Restitution Agreement**. Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. Defendant understands and agrees the Court may order the defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The defendant agrees that he owes restitution in the amount of $1,153,386.

14. **Disclosure of Assets.** Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which Defendant has any right, title, or interest, or over which Defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by Defendant. Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. Defendant further agrees to execute any releases that may be necessary for the

United States to obtain information concerning Defendant's assets and expressly authorizes the United States to obtain a credit report on Defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, Defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme, as charged in Count One of the Indictment.

The Defendant consents to the entry of a money judgment forfeiture equal to the amount of proceeds he obtained from the wire fraud scheme alleged in Count One of the Indictment. Defendant will receive a credit against the money judgment forfeiture for the net value of all property that is forfeited from him in this matter. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

16. **Waivers of Appeal and Collateral Attack.** Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, Defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which Defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by Defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment. Defendant also waives

the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

Defendant has discussed these rights with his attorney. Defendant understands the rights being waived, and Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment.

17. **FOIA Requests.** Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement.** Defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and Defendant.

Dated: 9/16/2025

JOSEPH H. THOMPSON
Acting United States Attorney

Dated: 9/16/2025

CHARLES RAY WORKMAN
Defendant

Dated: 9/16/2025

KEVIN DEVORE
Counsel for Defendant